# Exhibit "5"

*Pre-Litigation Demand Letter*
*dated August 9, 2022*
Class Action Complaint



Kevin O. Moon
228 Hamilton Ave., 3rd Fl
Palo Alto, CA 94301
415.730.0387
kevin@moonlawapc.com

August 9, 2022

***Via Certified Mail - Return Receipt Requested***

Joar A. Opheim, CEO
Nordic Naturals, Inc.
111 Jennings Drive
Watsonville, CA 95076

Richard Taylor
Nordic Naturals, Inc.
111 Jennings Drive
Watsonville, CA 95076

*Re: Demand Letter Pursuant to California Civil Code § 1782 and other applicable laws*

Dear Messrs. Opheim and Taylor:

Pursuant to California Civil Code § 1782 (a)(1), we write to notify Nordic Naturals, Inc. ("Defendant") that Defendant has violated, and continues to violate, the California Consumers Legal Remedies Act (Civ. Code § 1750, et seq.). Pursuant to § 1782(b), Defendant has 30 days to rectify the violations, as discussed below, or we intend to file a class-action lawsuit.

Defendant manufactures, markets, advertises, labels, and sells a variety of dietary supplements, including the following (in various sizes):

1. Nordic Naturals Ultimate Omega
2. Nordic Naturals Ultimate Omega 2x
3. Nordic Naturals Ultimate Omega Xtra
4. Nordic Naturals Complete Omega
5. Nordic Naturals Complete Omega Xtra
6. Nordic Naturals Omega-3
7. Nordic Naturals Ultimate Omega-D3
8. Nordic Naturals Algae Omega

1

9. Nordic Naturals Ultimate Omega Jr.
10. Nordic Naturals Omega 2x
11. Nordic Naturals Omega + CoQ10
12. Nordic Naturals Omega-3 Gummies
13. Nordic Naturals Ultimate Omega 2x Mini with Vitamin D3
14. Nordic Naturals Omega-3D
15. Nordic Naturals DHA Xtra
16. Nordic Naturals EPA Xtra
17. Nordic Naturals Omega LDL
18. Nordic Naturals Complete Omega-D3
19. Nordic Naturals Postnatal Omega-3
20. Nordic Naturals Artic Cod Liver Oil
21. Nordic Naturals Omega Vision
22. Nordic Naturals Zero Sugar Curcumin Gummies
23. Nordic Naturals Omega Curcumin
24. Nordic Naturals Omega Vision
25. Nordic Naturals Omega Woman with Evening Primrose Oil
26. Nordic Naturals Omega Joint Xtra
27. Nordic Naturals Immune Daily Defense
28. Nordic Naturals Vitamin C Gummies
29. Nordic Naturals Vitamin C Gummies Sport
30. Nordic Naturals Prenatal DHA
31. Nordic Naturals Omega Blood Sugar
32. Nordic Naturals Omega-3 Phospholipids
33. Nordic Naturals Kids' Nordic Flora Probiotic Gummies
34. Nordic Naturals Zero Sugar Ultimate Omega Gummy Chews
35. Nordic Naturals Recovery Plus
36. Nordic Naturals Omega Memory with Curcumin
37. Nordic Naturals Algae DHA

(hereinafter, "Products"). On the front display panel of each Product, Defendant prominently advertises a specific quantity or dosage of the supplement (the "Dosage Representation"). For example, Nordic Naturals Ultimate Omega makes a Dosage Representation of "1280 mg Omega-3." Similarly, Nordic Naturals Vitamin C Gummies makes a Dosage Representation of "250 mg Vitamin C."

In addition, the front display panel of each Product also prominently identifies how many capsule or gummy units are contained therein (the "Unit Representation"). For example, Nordic Naturals Ultimate Omega makes a Unit Representation of "120 Soft Gels." Similarly, Nordic Naturals Vitamin C Gummies makes a Unit Representation of "120 Gummies."

2

**Nordic Naturals Ultimate Omega**




## Nordic Naturals Vitamin C Gummies



Based on the Dosage and Unit Representations displayed on the front label of each Product, reasonable consumers believe that **each** capsule or gummy unit contains the advertised dosage. However, in spite of the labeling, each capsule or gummy unit contains only a fraction of the advertised dosage. Therefore, a consumer must take two or more capsule or gummy units in each Product to receive the advertised dosage.

For example, based on the Dosage and Unit Representations, reasonable consumers of Nordic Naturals Ultimate Omega believe that each capsule in the Product contains 1280 mg of Omega-3. As such, reasonable consumers believe there are 120 doses of 1280 mg of Omega-3 in each bottle of Nordic Naturals Ultimate Omega. However, in actuality, there are only 60 doses in each bottle because a consumer must take two capsules to receive the advertised doseage of Omega-3. Accordingly, consumers are only receiving half of the number of doses that are reasonably expected when purchasing Nordic Naturals Ultimate Omega.

Consequently, the representations made on the labeling and in the advertising of the Products are false, misleading, and likely to deceive reasonable consumers. And the Ninth Circuit Court of Appeals agrees.

In *Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667, 669-70 (9th Cir. 2017), the plaintiff brought a putative class action against a vitamin retailer based on the plaintiff's purchase of various dietary supplements, including defendant's 1000 mg Calcium Caramel Chews. Similar to here, the front display panel of the product prominently represented— without any qualification—the quantity of calcium in the product as "1000 mg." The front label also represented that it contained "60 soft chews." However, on the product's back label, the defendant clarified that each "chew" contained only 500 mg of calcium. Therefore, because consumers must take two chews to receive the advertised dosage, the plaintiff alleged that the product was deceptive and misleading.

The Ninth Circuit agreed and held that the plaintiff "did not have a duty to validate claims on the front of a product's label by cross-checking them against information contained in small print on the back." *Id.* at 670. The Court explained that "[c]onsumers review the small print on a product's label to learn additional details about a product, not to correct potentially misleading representations found on the front." *Id.*; *see also Williams v. Gerber Prod. Co.*, 552 F.3d 934, 936 (9th Cir. 2008) ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.").

*Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 903 (N.D. Cal. 2021) is also instructive. In that case, the plaintiff brought a putative class action, alleging defendant's

products misled consumers about the dosage of Vitamin C and elderberry concentrate in certain gummy products. The plaintiff alleged that when he purchased the Vitamin C gummies, he relied on the dosage information stated on the front label, which read "750 mg of Vitamin C" and "45 Gummies." The plaintiff contended that reasonable consumers—like himself—believed that *each* gummy contained 750 mg of Vitamin C. Moreover, the plaintiff alleged that he would not have purchased the product or would have paid less for it had he not been misled by the front label.

The defendant filed a motion to dismiss arguing that the alleged misrepresentations are not deceptive because the product's back label clarifies that the dosage of the Vitamin C is per serving, not per gummy. Relying on *Walters v. Vitamin Shoppe Indus., Inc.*, the district court denied the defendant's motion, finding that the plaintiff has "properly alleged an actionable misrepresentation." Importantly, the court found that, although "the information panel on the back of the Products instructs the purchaser to consume a three-gummy serving size and to take three gummies daily," the plaintiff's "failure to read the clarifying serving-size information does not constitute a failure to reasonably safeguard his interests."

## Defendant's Competitors Label Their Products with Accurate Dosage Information

In contrast to Defendant's Products, the dietary supplements Defendant's competitors market and sell contain correct dosage information on the front label on their products. They do so through one of two ways. First, the products will clearly specify that the quantity of the advertised supplement is per serving or per [x] number of units. Second, the products will clearly specify the actual quantity of the advertised supplement contained in each unit (i.e., capsule or gummy). In both instances, consumers are provided truthful and accurate dosage information on the product's front label, so they are not required to "cross-check [it] against information contained in small print on the back." *Walters*, 701 F. App'x at 670.

///
///
///
///
///
///
///
///
///
///
///
///
///

6

**Examples of the First Scenario**





**Examples of the Second Scenario**



## Supplement Facts

Serving Size 1 Softgel

| Amount Per Serving | | %Daily Value |
|---|---|---|
| Calories | 15 | |
| Total Fat | 1.5 g | 2%** |
| Saturated Fat | 0.5 g | 3%** |
| Cholesterol | 10 mg | 3% |
| Fish Oil | 1,200 mg (1.2 g) | *** |
| provides 360 mg of Total Omega-3 Fatty Acids† comprising of: | | *** |
| EPA (Eicosapentaenoic Acid) | | *** |
| DHA (Docosahexaenoic Acid) | | *** |
| Other Fatty Acids | | *** |

**Percent Daily Values are based on a 2,000 calorie diet.
***Daily Value not established.

**Other Ingredients:** Gelatin, Vegetable Glycerin, Mixed Natural Tocopherols.

Contains fish (anchovy, herring, mackerel, sardine) ingredients.

†As Natural Triglycerides



| Supplement Facts | |
|---|---|
| Serving Size 2 Softgels | |
| Servings Per Container 115 | |

| Amount Per Serving | % Daily Value |
|---|---|
| Calories  35 | |
| Total Fat  3 g | 4%** |
| Saturated Fat  1 g | 5%** |
| Polyunsaturated Fat  1 g | |
| Monounsaturated Fat  0.5 g | |
| Cholesterol  25 mg | 9% |
| Total Carbohydrate  1 g | < 1%** |
| Protein  less than 1 g | |
| Fish Oil  2400 mg | * |
| Total Omega-3 Fatty Acids  720 mg | * |
| Omega-3 EPA (Eicosapentaenoic Acid)  360 mg | * |
| Omega-3 DHA (Docosahexaenoic Acid) 240 mg | * |
| Omega-3 Other  120 mg | * |

*  Daily Value not established.
** Percent Daily Values are based on a 2,000 calorie diet.

**Violation of California Consumer Protection Statutes**

In light of the foregoing, Defendant has violated, and continues to violate, the CLRA and California law. Specifically, in connection with the advertising, labeling, packaging, and marketing of the Products, Defendant has violated the following subdivisions of California Civil Code section 1770(a):

- Representing that the Products have (i) "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (1770(a)(5));

- Representing that the Products are of "a particular standard, quality, or grade," when they are of another (1770(a)(7)); and

10

- "Advertising goods . . . with the intent not to sell them as advertised" (1770(a)(9)).

In addition, Defendant's conduct violates California Business & Professions Code § 17500, which prohibits "unfair, deceptive, untrue or misleading advertising." Defendant violates § 17500 by representing, through false and misleading advertising, and through other express representations, that the Products contain a higher dosage per unit of the advertised dietary supplement than they actually have. As described above, these statements are false and misleading.

Defendant's conduct also violates California Business & Professions Code §§ 17200, *et seq.* Among other things, Defendant's conduct constitutes an unfair or fraudulent business practice. Defendant makes material false representations to consumers concerning its Products that are likely to deceive consumers into purchasing the Products on the mistaken belief that the Products contain a higher dosage per unit of the advertised dietary supplement than they actually have. Consumers have been directly injured by Defendant's conduct in that they would not have purchased the Products, or would have purchased them on different terms, had they known the truth about the Products.

As a proximate and direct result of Defendant's conduct, our client, Woojin Shim ("Plaintiff"), and similarly situated consumers, have been injured and suffered damages by purchasing the Products. Likewise, Defendant has unreasonably profited from its conduct.

## **How to Resolve These Matters**

Defendant has thirty (30) days from the date on which this notice is served upon Defendant to correct, repair, replace, or otherwise rectify the aforementioned violations. Plaintiff demands that Defendant immediately cease the unlawful business practices described herein, disgorge the profits derived from these unlawful business practices and false advertising, and make restitution to our client and all similarly situated consumers of the Products, without limitation.

In addition, Plaintiff requests that Defendant allow us to verify, by depositions or other methods, how many consumers were affected by Defendant's improper conduct, that Defendant has implemented any resolution we reach, and that Defendant has implemented procedures to prevent the improper conduct from reoccurring.

Furthermore, on behalf of Plaintiff and similarly situated consumers, we request that Defendant institute a recall program, to be approved and supervised by us, as counsel to Plaintiff and a putative class of similarly situated consumers, of all Products that presently have packaging or labeling that makes any of the claims as described herein.

**Preservation Request**

This letter also constitutes notice to Defendant that it is not to destroy, conceal or alter in any manner whatsoever any evidence, documents, merchandise, information, paper or electronic data and/or other tangible items or property potentially discoverable in the above-referenced matter, including but not limited to documents that relate to your processes for advertising, your process for creating marketing materials and product labels regarding the Products, including, but not limited to, the following:

1. All documents concerning the advertising, manufacturing, marketing, labeling, distribution, or sale of the Products;

2. All communications with any U.S. administrative entity, or complaints by any private person or entity concerning product development, manufacturing, marketing and sales of the Products; and

3. All communications with customers concerning complaints or comments concerning the Products and their advertising and labeling.

If we do not hear from you within the 30-day time period, we will assume that you will not take the corrective action requested, and we will proceed to file suit.

If you contend that any of the facts contained in this letter are inaccurate in any respect, please provide us with all of your facts, contentions, and supporting documents as quickly as possible, but in no event later than thirty (30) days from the date of your receipt of this letter.

We are available if you want to discuss the issues raised in this letter.

Respectfully,

Kevin O. Moon